UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PATRICK LANDERS,

                              Plaintiff,

            v.                                                            COMPLAINT

                                                                          JURY TRIAL DEMANDED

THE CITY OF NEW YORK, NEW YORK CITY                          16  CV 5176
POLICE DEPARTMENT, NEW YORK CITY
POLICE OFFICER KEON FRANKS (Shield #12714),
NEW YORK CITY POLICE LIEUTENANT FNU AHMED;
NEW YORK CITY POLICE OFFICERS JOHN DOE #1-#5,
individually and in their official capacities,
(the names "FNU" and  "John Doe" being fictitious as their
complete names and/or current identities are presently unknown,

                              Defendants.

------------------------------------------------------------------------X

        Plaintiff Patrick Landers, through his attorneys Geoffrey Stewart and Moira Meltzer-

Cohen, as and for his complaint, does hereby state and allege:

                              **PRELIMINARY STATEMENT**

        This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and

Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of

1871, *as amended*, codified as 42 U.S.C. § 1983 and by the laws and Constitution of the State of New

York.

        Plaintiff Patrick Landers', a videographer with official New York City press credentials,  rights

to document public police activities, to assemble freely, to be free from unreasonable seizures and to

receive due process under the law were violated when officials of the New York City Police

Department ("NYPD") singled him out for a retaliatory arrest without probable cause on April 14,

2015 causing Mr. Landers to lose substantial income, and to endure unlawful confinement and

psychological harm. By reason of defendants' targeting a member of the press for unconstitutional

arrest, and the failure of John Doe officers to intervene, Mr. Landers was deprived of his rights secured by the First, Fourth, Fifth and Fourteenth Amendments.

Mr. Landers seeks an award of compensatory and punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

Venue is proper for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) in that Mr. Landers' claim arose in the County of Kings in the State of New York, within the confines of this judicial district.

2.  Supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 as to any and all of Plaintiffs' claims arising under New York state law as such claims share a common nucleus of operative facts with Plaintiffs' federal claims herein.

## TRIAL BY JURY

3.  Plaintiffs demand a trial by jury on each and every one of their claims pleaded herein pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

4.  Plaintiff, Patrick  Landers, a citizen of the United States, is a 49 year old native New Yorker and father of two, who was, at all times relevant to this action a resident of Brooklyn, in the State of New York.

5.  Defendant The City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The

City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

6.   Defendants NYPD Officer KEON FRANKS, NYPD Lieutenant FNU AHMED, and NYPD Officers John Doe #1 through #5 (referred to collectively as the "officer-defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD. The officer-defendants are being sued individually.

7.   At all times relevant herein, the NYPD officer-defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

8.   The officer-defendants' acts and omissions hereafter complained of were   carried out intentionally, recklessly, with malice, and in gross disregard of Mr. Landers' rights.

9.   Defendant CITY OF NEW YORK was responsible for the hiring, training, supervision, discipline, retention and promotion of officers, supervisors, and employees within its agencies, including the NYPD, and/or other agencies which employed the Defendants herein.

**STATEMENT OF FACTS**

10.   Plaintiff, Patrick Landers is a 49 year old father of two, who lives with his wife and sons in Brooklyn, New York. He is an accomplished video-journalist, and holds an NYC/NYPD issued Press Pass.

11.   Inspired by the heroic actions of first responders during 9/11, Mr. Landers took up photography, specializing in images involving police and firefighters. He frequently sells photographs and video to major news outlets.

12.   He also hosts his own weekly public access cable television show, "Deliberately Incorrect." Mr. Landers is passionate about journalism, and over the last many years it has come to represent an increasingly large part of his income.

13.   On Tuesday, April 14, 2015, Mr. Landers was scheduled to produce an episode of "Deliberately Incorrect," to air at 8:00 pm. That afternoon at approximately 6:00 pm he went to document a Black Lives Matter protest for use in his program.  He had with him his video camera, and his NYPD issued Press Pass. He began videotaping upon his arrival, and continued to videotape until shortly before his eventual arrest.

14.   Plaintiff Patrick Landers shot and preserved video which portrays him walking down the street with the apparently peaceful march, interviewing people about why they had decided to attend the protest. Within a few minutes, NYPD police issued an order for individuals walking in the street to get onto the sidewalk. As clearly documented on Mr. Landers' own video, he complied.

15.   Shortly thereafter, Mr. Landers filmed a protester being arrested, and he, along with many other people, turned toward the fray. Mr. Landers presented his press pass,  and lifted his video camera aloft to capture the action. Mr. Landers was attempting to document the arrest of an individual who was on the ground with numerous police holding him down and numerous police creating a physical wall around the scene.   A police officer approached Mr. Landers as he was filming and said "I know you're press, just take a step back."  Mr. Landers obeyed and took a step back.

16.   A different police officer began pushing Mr. Landers, who said, in substance, "I'm with the press."  The officer responded "I don't care." Mr. Landers replied, in substance, "It is your job to care about the First Amendment."

4

17.   Immediately thereafter, NYPD Lieutenant "FNU" AHMED approached with a bullhorn pushed up to Mr. Landers, and said, through the bullhorn, directly into Mr. Landers' face, "You need to stay in the zone of safety." This police officer approached so close that the bullhorn was hitting Mr. Landers in the head. It is evident from the video that Mr. Landers is at least 1520 feet from the arrest still taking  place in the background, and that there are at least ten officers forming a cordon around that arrest.

18.   The video shows Mr. Landers explaining that he is with the press, while another police officer drags a young black man by his ear across the frame. Another police officer can be heard repeating "backup backup backup," and poking Mr. Landers with his baton. Mr. Landers can be seen simultaneously backing up in compliance with the order to back up, while holding up his press pass, pleading with the officers to recognize that he is a member of the press.

19.   Again NYPD Lieutenant "FNU" AHMED with the bullhorn appears, screaming into the bullhorn that Mr. Landers is to be arrested for obstructing government administration, despite his having continuously complied with all orders, and never having been anywhere near any governmental administration.  At this point Mr. Landers is no longer able to continue documenting the arrest and the police management of the protest and his video ends.

20.   Mr. Landers was handcuffed and placed in a van. He was left there for between 3-4 hours. During that time he lost consciousness from heat and dehydration. When he came to, he was nervous and panic stricken.

21.   At some point he was then taken to the 75th precinct in East New York, Brooklyn, and held until after 2 am. on April 15, 2015, when he was finally released with a desk appearance ticket requiring his appearance in Criminal Court for the City of New York, Kings County on May 27, 2015. Prior to being released he spent approximately 8 hours in custody, he missed his weekly cable

television broadcast, and lost out on income he would have made from the sale of the protest video he had shot.

22. On April 14, 2015 Defendant Police Officer KEON FRANKS created an official NYPD arrest worksheet and online arrest worksheet in which he claimed in the narrative section that Plaintiff Mr. Landers and a group of 80 demonstrators disobeyed the officer's order that he remain on the sidewalk and not enter the roadway. Defendant KEON FRANKS also claimed that Plaintiff disobeyed his orders and stepped around the officer and entered the roadway. Defendant KEON FRANKS report cited Plaintiff for 1 count of disorderly conduct under New York Penal Law 240.20(6). Under PL 240.20(6): "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." Defendant Officer KEON FRANKS knew that this allegation was false when he prepared the official police reports.

23. The following day his mother, who was then in her final illness, called Mr. Landers, and told him she had seen footage of his arrest aired on the NBC nightly news. He was mortified, and remains deeply pained by the fact that this was one of his mother's last memories of him.

24. On May 27, 2015 Plaintiff appeared as directed by the desk appearance ticket in Kings County Criminal Court and was arraigned by the court on one count of an alleged violation of Penal Law 240.20(6) upon the sworn allegations of Defendant Police Officer KEON FRANKS. In this document, known as a criminal court information, Defendant KEON FRANKS swore that Plaintiff, on April 14, 2015 was arrested because Plaintiff disobeyed an order to step back from an area where police were effectuating arrests. This document was filed with the court and contains false statements made by Defendant KEON FRANKS. PL 240.20(6) is a violation under New York law which carries

a maximum jail sentence of 15 days and/or a $250 fine. Plaintiff Mr. Landers was released on his own recognizance and directed by the court to appear on June 25, 2015.

25.   Plaintiff was required to appear in Criminal Court on 3 or 4 occasions as he defended himself against the false allegations made by Defendant Police Officer KEON FRANKS.   On October 2, 2015 the Office of the District Attorney moved to dismiss the sole charge of Disorderly Conduct contained in Docket No.  2015KN033724. In so moving, the prosecution noted that there appeared to be no lawful basis for the arrest in the first place.

26.   While the criminal case worked its way through the court process, Mr. Landers' press credentials were pending renewal. In order to renew a Press Pass, journalists must show that they are in good standing, and complete an in person interview with a representative from the NYPD. Because this renewal process was taking place while he had an open case, he suffered extreme anxiety regarding the prospect that his pass would be denied, cutting him off from career opportunities, a beloved vocation, and income.

27.   He was also extremely concerned about the fact that he had been arrested in spite of having complied with all NYPD orders, while engaging in what he correctly believed to be constitutionally protected conduct. Subsequently he curtailed his normal video and photography activities and  he did not go out to cover any events at which police were active, because he lost faith that he could avoid arrest by conducting himself lawfully.

28.  Mr. Landers has experienced psychological pain, anxiety, and humiliation that accrued from his arbitrary arrest, lengthy detention and that the arrest was publicized in the news. He continues to harbor fear and mistrust of police officers in general.  He has also lost a great deal of income as a result of having been absent from the world of the press and journalism for several months following this ordeal.

**FIRST CLAIM**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
**(Against the individual defendants)**

29.  Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

30.  By the individual defendants' conduct and actions in seizing plaintiff in retaliation for protected activity, namely, filming police conduct occurring in a public space during a constitutionally protected protest, by detaining him without reasonable suspicion or probable cause, and for continuing that detention far longer than necessary to accomplish any legitimate law enforcement objectives (of which there were none), by abusing the criminal process, and by failing to intercede to prevent the complained of conduct, defendants acting under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments.

31.  As a result of the foregoing, plaintiff was deprived of liberty, suffered emotional distress, humiliation, loss of property, costs and expenses, and was otherwise damaged and injured.

**SECOND CLAIM**
**_MONELL_ CLAIM AGAINST DEFENDANT CITY THROUGH 42 U.S.C. § 1983**
**(Against the City of New York)**

32.  Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

33.  The individual defendants' acts and omissions described above were carried out pursuant to the City's overlapping customs and practices which were in existence on April 14, 2015 and were

engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agency, the NYPD.

34.  The acts complained of were carried out by the individual defendants in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

35.  The aforementioned custom and practice of the City and the NYPD include, but are not limited to making retaliatory arrests against persons who lawfully photograph, document, or record police activity.

36.  The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in below:

### Journalists and Photographers

- **May 30, 2007 / Robert Carneval / <u>Carneval v. City of New York</u>, 08 CV 9993 (DAB) (AJP) (S.D.N.Y.)**
  A Manhattan photographer, Robert Carneval, was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van. After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated he had the right to film, the officer led him to a police car, examined his ID, then arrested him. Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, The New York Times (March 31, 2010), http://cityroom.blogs.nytimes.com/2010/03/31/citysettleswith pairarrestedafterpolice-confrontation/.

- **November 2011 / Karen Matthews, Seth Wenig, Matthew Lysiak, Patrick Hedlund, Paul Lomax and Julie Walker**
  In November of 2011, at least six journalists were arrested while covering the raid and eviction of Occupy Wall Street protesters from Zuccotti Park. Thirteen news organizations in New York City lodged complaints about the treatment of journalists and the suppression of coverage of the event, and ten press clubs, unions, and other groups called for an investigation into the police conduct at issue. CBS New York / AP, *Several Journalists Among Those Arrested During Zuccotti Park* Raid, CBS New York (November 15, 2011) http://newyork.cbslocal.com/2011/11/15/officialsjournalistsamongthosearrested during-zuccottiparkraid/; Brian Stelter, *News Organizations Complain About Treatment During Protests*, The New York Times: Media Decoder (November 21, 2011)

http://mediadecoder.blogs.nytimes.com/2011/11/21/newsorganizations complainabout-treatmentduringprotests/.

- **November 15, 2011 / Timothy Fitzgerald / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
  On or about November 15, 2011, in Zucotti Park, a publicly accessible open space, several police officers grabbed Timothy Fitzgerald, a citizen reporter who was documenting protest activities and police response to same, pulled him to the ground and arrested him.

- **November 15, 2011 / Douglas J. Higginbotham / <u>Higginbothan v. Sylvester, et al</u>, 105 F. Supp.3d 369 (S.D.N.Y.)**
  During the eviction of Zucotti Park, an international journalist was atop a phone booth photographing an event of public importance, when he was asked to get down by police. As he complied with their request they suddenly pulled him causing him to fall to injury, and thereupon arrested him without cause. http://www.deadlineclub.org/archives/665

- **August 4, 2012 / Robert Stolarik**
  Photographer Robert Stolarik, who worked regularly for The New York Times for more than a decade, was charged with obstructing government administration and resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl about 10:30 pm., when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said. The arresting officer was later indicted for falsifying statements surrounding Ms. Stolarik's arrest. Russ Buettner, *Officer Is Indicted on Charges of Lying About Photographer's Arrest,* The New York Times (Aug. 26, 2013), http://www.nytimes.com/2013/08/27/nyregion/officerisindicted onchargesoflyingabout-photographersarrest.html.

- **September 17, 2012 / Christopher Faraone / <u>Faraone v. City of New York et al</u>, 13 CV 09074 (TPG) (S.D.N.Y.)**
  Christopher Faraone, a journalist, was photographing a public demonstration at One Chase Manhattan Plaza when NYPD officers tackled, battered and arrested him. One of the officers directed him to cease his reporting activities within New York City.

- **September 1517, 2012 / Julia Reinhart, Charles Meacham, and John Knefel** Five photojournalists reporting on Occupy Wall Street protesters were arrested in course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau. Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist (Sept. 19, 2012) http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

- **December 12, 2011 & March 15, 2012 / Paul Sullivan, John Knefel and Justin Wedes / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**

On December 12, 2011, Paul Sullivan, John Knefel and Justin Wedes, citizen reporters who were documenting protest activities and police response to same at the Winter Garden, a publicly accessible open place, were grabbed, pulled to the ground and arrested without warning or probable cause by the NYPD. On March 15, 2012, Mr. Wedes was again threatened with arrest for the same legal activity.

- **March 2012 / Unknown**
  In March of 2012, a cameraman from WABCTV was struck by an officer at crime scene for unknown reasons. Carlos Miller, *NYPD Cop Assaults News Videographer At Crime Scene*, Photography Is Not A Crime (March 22, 2012)
  http://photographyisnotacrime.com/2012/03/22/nypdcopassaultsnews videographeratcrime-scene/

- **November 27, 2012 / Angel Zayas / <u>Zayas v. Kelly</u>, 13 CV 08808 (JMF) (S.D.N.Y.)**
  On November 27, 2012, a freelance photographer, Angel Zayas, was arrested for photographing officers effect an unrelated arrest in Grand Central Terminal. Daniel Beekman, *Photographer trying to shoot stop and frisk sues NYC over police harassment*, New York Daily News (December 13, 2013) http://www.nydailynews.com/news/justicestory/photog-shootingfriskingsuesnyc harassmentarticle1.1546548

- **January 16, 2013 / Shimon Gifter**
  A photographer from VIN News, a media outlet for the Orthodox Jewish community, had his camera seized and thrown to the ground, his memory card erased, and his Blackberry damaged after photographing officers stopping and frisking several young men. The photographer was also handcuffed and held up against a wall before being released with a warning. Boruch Shubert, *Police Brutality in Midwood?*, The Jewish Voice (January 24, 2013) http://jewishvoiceny.com/index.php?option=com_ content&view=article&id=2978:police-brutalityin midwood&catid=106:international&Itemid=289; Sandy Eller, *Charedi Photographer Claims Handcuffed By NYPD After Videotaping Flatbush Police Stop*, Voz Iz Neias? (January 20, 2013). http://www.vosizneias.com/122118/2013/01/20/brooklynny charediphotographerclaims-handcuffedbynypdaftervideotapingflatbushpolice stop/.

- **April 19, 2013 / Justin Thomas / <u>Thomas v. City of New York</u>, 13 CV 6139 (SJ) (LB) (E.D.N.Y.)**
  A film student was arrested filming the exterior of the 72nd Precinct on April 19, 2013. Officers confiscated the student's cell phone, camera, and the camera's memory card, as well as his friend's memory card from a camera. Officers failed to remove the correct memory card from the friend's camera, however, leaving evidence of the encounter.

## <u>Concerned Citizens</u>

- **February 9, 2005 / Lumumba Bandele, Djibril Toure and David Floyd / <u>Bandele v. The City of New York</u>, 07 CV 3339 (MGC) (S.D.N.Y.)**
  Lumumba Bandele, Djibril Toure and David Floyd were arrested while videotaping two arrests in BedfordStuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police

from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights. *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (April 27, 2007), http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757C0A96 19C8B63.

- **September 29, 2009 / Dennis Flores / <u>Mesa v. City of New York</u>, 09 CV 10464 (JPO) (S.D.N.Y.)**
  On September 29, 2009, Dennis Flores was arrested when he photographed NYPD officers using excessive force to disperse a crowd at a festival in the Bronx. At one point prior to Flores' arrest, an NYPD officer stated it was "illegal to photograph police."

- **October 17, 2010 / Anibal Ortiz / <u>Ortiz v. City of New York</u>, 11 CV 7919 (JMF) (S.D.N.Y.)**
  On October 17, 2010, Anibal Ortiz was arrested after he began recording NYPD officers, who asked him for identification, with a cell phone camera.

- **July 11, 2011 / Caroline Stern and George Hess / <u>Stern v. City of New York</u>, 12 CV 04863 (SAS) (S.D.N.Y)**
  On July 11, 2011, Caroline Stern was arrested and her boyfriend George Hess, was tackled and arrested after he began video recording an encounter with officers in a subway station. Kathianne Boniello, *Couple handcuffed, jailed for dancing on subway platform: lawsuit*, The New York Post (July 8, 2012) http://nypost.com/2012/07/08/couplehandcuffedjailedfor - dancingonsubway platformlawsuit/

- **April 27, 2012 / John Runnells / <u>Runnells v. City of New York</u>, 13 CV 2904 (KBF) (S.D.N.Y.)**
  On April 27, 2012, John Runnells' camera was seized and its footage erased after he video recorded a police traffic checkpoint. Mr. Runnells continued recording the officers after his camera was returned, and he was subsequently arrested. Once again, his camera was seized and the footage deleted.

- **June 5, 2012 / Hadiyah Charles / <u>Charles v. City Of New York</u>, 12 CV 06180 (SLT) (SMG) (E.D.N.Y)**
  On June 5, 2012 a woman was pushed and arrested for using her phone to video record the stopandfrisk of three unrelated young men on a public sidewalk. Rocco Parascandola, *Woman suing NYPD for wrongful arrest discovers that a key piece of evidence has mysteriously vanished from the Brooklyn stationhouse*, New York Daily News (October 17, 2013) http://www.nydailynews.com/newyork/brooklyn/brooklyn precinctlogbookmysteryarticle1.1487721

- **August 2012 / Unknown**
  In August of 2012, a man was threatened with arrest for filming outside about 300 feet away from the security checkpoint at One Police Plaza. Carlos Miller, *NYPD Cop Fails at Intimidating Man From Video Recording Police Headquarters*, Photography Is Not A Crime (August 17, 2012) http://photographyisnotacrime.com/2012/08/17/nypdcop failsat- intimidatingman fromvideo recordingpoliceheadquarters/

- **January 10, 2012 / Justin Sullivan / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
  On January 10, 2012, Justin Sullivan was arrested for filming an Occupy Wall Street protest at Grand Central Terminal and his camera was confiscated. Later, Mr. Sullivan returned to the police precinct at the terminal to retrieve his camera and he was re arrested. A witness reported an officer destroyed Mr. Sullivan's camera.

- **March 2012 / Unknown**
  In March of 2012, an individual video recording officers beating another man with batons was told to leave the scene and threatened with pepper spray.
  Carlos Miller, *NYPD Takes Break From Beating Man To Threaten Videographer With Pepper Spray* (March 18, 2012) http://photographyisnotacrime.com/2012/03/18/nypdtakesbreakfrom-beatingman tothreatenvideographerwithpepperspray/.

- **September 28, 2012 / Santos Bobet / <u>Bobet v. The City of New York</u>, 14 CV 1396 (WHP) (JLC) (S.D.N.Y)**
  On September 28, 2012, at approximately 8:55 pm., Santos Bobet observed someone being arrested near the Whitlock Avenue 6 Station in the Bronx. After beginning to videotape the arrest, he was arrested by Officer Kelvin Prado, who then along with his partner deleted the video footage.

- **March 13, 2013 / Ed Garcia Conde**
  Ed Garcia Conde was arrested on March 13, 2013 after he used his phone to video record a police officer's interaction with another man. Ben Yakas, *Video: Bronx Man Hauled To Jail For Exercising Right To Videotape Cops*, Gothamist (March 16, 2013) http://gothamist.com/2013/03/16/video_bronx_man_hauled_to_jail_for.php.

- **May 16, 2013 / Christina Gonzalez and Matthew Swaye**
  Two Harlem residents were arrested after they filmed NYPD officers conduct stop and frisks at a car checkpoint. Christina Gonzalez and Matthew Swaye said they were returning from a Bronx mall at about 10:30 pm. when they noticed several vehicles stopped and Gonzalez took out her camera to begin filming.
  Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA Info (May 21, 2013), http://www.dnainfo.com/new york/20130521/centralharlem/professional-agitatorsonnypdwantedflierarrested afterfilmingstop.

- **June 5, 2013 / Rahul Saksena / <u>Seksena v. The City of New York</u>, 14 CV 5129 (JBW) (LB) (E.D.N.Y.)**
  On June 5, 2014, at approximately 10:00 pm., Mr. Saksena was arrested in retaliation for filming a civilian police interaction in the Bushwick section of Brooklyn.

- **August 26, 2013 /  Jonathan Harris**
  NYPD officers arrested a Bronx teenager, Jonathan Harris, after he was filming the officers attack and threaten two young girls in a Bronx park. The teenager told the officers to leave the girls alone and began filming them with his phone. The officers began chasing him, tackled him and punched him before arresting him. Jennifer Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Daily News (Aug. 29, 2013),

http://www.nydailynews.com/newyork/bronx/teensmauled copsarticle-1.1440394#ixzz2eVh68jgw.

**September 19, 2013 / Sean Basinski / <u>Basinski v. The City of New York</u>, 14 CV 1057 (LTS) (S.D.N.Y.)**
On September 19, 2013, a lawyer, Sean Basinski was arrested while using a phone to records police during a rally in front of Midtown North Precinct police station on West 54th Street. Colin Moynihan, *Street Vendors Protest Treatment by Police*, The New York Times (October 2, 2013), http://www.nytimes.com/2013/10/03/nyregion/streetvendorsprotesttreatmentby police.html?_r=0.

**September 21, 2013 / Michael Guzman / *Guzman v. The City of New York*, 15 CV 2662 (KAM)(VMS)(E.D.N.Y.)**
 On September 21, 2013, at approximately 5:50 pm., Mr. Guzman was in the Borough Hall subway station and observed members of the NYPD detain a number of individuals. He began to records the interactions the officers were having with the detainees.  In response to his recording the officers' conduct, he was arrested.

**September 25, 2013 / Debra Goodman / <u>Goodman v. The City of New York</u>, 14 CV 5261 (CM) (S.D.N.Y)**
Debra Goodman was arrested by two NYPD officer for using her cellphone to videotape an interaction between the officers and a homeless woman.

**October 11, 2013 / Bina Ahmad**
On October 11, 2013, a public defender, Bina Ahmad, was arrested for photographing the arrest of two men at the KingstonThroopSubway station in Brooklyn. The  charge against her was dismissed at arraignment.

**February 22, 2014 / Jeronimo Maradiaga, Cosme Del RosarioBell, Kevin Park and Randolph Carr**
On February 22, 2014, four young men, Jeronimo Maradiaga, Cosme Del Rosario Bell, Kevin Park and Randolph Carr, who are part of Harlem Copwatch were arrested for videotaping a vehicular checkpoint set up on the 145th Street Bridge between Manhattan and the Bronx.

37.  All of the foregoing acts by defendants deprived the plaintiff of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraph 30.

38.  Defendant City of New York knew or should have known that the acts alleged herein would deprive  the plaintiff of his rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

14

39.  Defendant City is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

40.  Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policymaking officers and officials of the NYPD and the City, including former Commissioner Raymond Kelly and Commissioner William Bratton, did not take steps to terminate these policies, practices and/or customs, did not discipline individuals who engaged  in

such polices, practices and/or customs, or otherwise properly trained police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

41.  The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, the individual defendants felt empowered to arrest plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of plaintiff's constitutional rights. Pursuant to the aforementioned City policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

42.   Plaintiff's injuries were a direct and proximate result of the defendant City and the NYPD's wrongful *de facto* policies and/or well settled and widespread customs and practices  and of

the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers.

43.   Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiff's constitutional rights.

**THIRD CLAIM**

**VIOLATION OF RIGHTS GUARANTEED BY THE FIRST,  FOURTH, FIFTH AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983**
***(Against all defendants)***

44.  Mr. Landers repeats and realleges each and every allegation contained in paragraphs above with the same force and effect as if fully set forth herein.

45.  By targeting Mr. Landers as a member of the press; by interfering with his lawful activities as a video-journalist; by harassing Mr. Landers who was at all times in compliance with the unlawful orders of police; and by ordering the arrest of Mr. Landers, who was at all times behaving lawfully, by failing to intervene to prevent other officer-defendants from committing the above-referenced acts and omissions, and by the other acts and omissions described above, the officer-defendants acted under color of state law and deprived Mr. Landers of his rights, privileges and immunities secured by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including but not limited to deprivation of the following constitutional rights: (a) freedom from unreasonable searches and seizures of his person, home, papers, effects, and other personal property; (b) freedom from false arrest and false imprisonment; (c) freedom from abuse of process; (d) freedom to exercise his rights as guaranteed under the First Amendment; and (e) freedom from deprivation of liberty without due process of law.  As a result of the foregoing, Mr. Landers was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## FOURTH CLAIM
## FALSE ARREST AND FALSE IMPRISONMENT
## UNDER 42 U.S.C. § 1983

46.  Plaintiff Landers incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

47.  By the actions described above, defendants caused to be falsely arrested or actually falsely arrested Mr. Landers, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so, and caused him to be detained for at least seven  hours.  Mr. Landers was aware of the imprisonment to which he was subjected. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Mr. Landers and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

48.  The conduct of the officer-defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant City, clothed with and/or invoking state power and/or authority, and, as a result, defendant City is liable to Mr. Landers pursuant to the state common law doctrine of *respondeat superior*.

49.  The defendants' deprivations of Mr. Landers's rights resulted in the injuries and damages set forth above.

## FIFTH CLAIM
## ABUSE OF PROCESS
### *(Against all defendants)*

50.  Mr. Landers incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

51.  By the conduct and actions described above, the officer-defendants employed  regularly issued process against Mr. Landers, compelling the performance or forbearance of prescribed acts.

The purpose of activating the process was intent to harm Mr. Landers without economic or social excuse or justification, and the defendants were seeking a collateral advantage (including but not limited to preventing Mr. Landers from documenting or exposing the violence of their concurrent conduct) or corresponding detriment to Mr. Landers, which were outside the legitimate ends of the process. The acts and conduct of the officer-defendants were the direct and proximate cause of injury and damage to Mr. Landers and violated their rights as guaranteed by the laws and Constitution of the State of New York.

52. The defendants' deprivations of Mr. Landers's rights resulted in the injuries and damages set forth above.

**SIXTH CLAIM**
**VIOLATION OF AND RETALIATION FOR THE EXERCISE**
**OF RIGHTS TO FREE SPEECH UNDER THE FIRST AMENDMENT**

53. Plaintiff Patrick Landers repeats, reiterates, re-alleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

54. Plaintiff had a consitutionally protected right, under the First Amendment, to document the activities occurring around him immediately prior to his arrest.

55. Plaintiff did not interfere in any way in the Defendant Officers execution of their duties during this incident.

56. Plaintiff's arrest, detention and prosecution for the charge of disorderly conduct were intended as retaliation for documenting the violent and forceful arrest of an anti-police protester, and this resulted in his arrest and did chill plaintiff's right to freedom of expression under the U.S. Constitution's First Amendment.

**SEVENTH CLAIM**
**NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
*(Against defendant City)*

57. Mr. Landers incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

58.   Defendant City negligently hired, screened, retained, supervised, and trained the officer defendants. The acts and conduct of the officer-defendants were the direct and proximate cause of injury and damage to Mr. Landers and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

59.   The defendants' deprivations of Mr. Landers's rights resulted in the injuries and damages set forth above.

## EIGHTH CLAIM
## NEGLIGENCE

60.   Mr. Landers incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

61.   Defendant City owed Mr. Landers a duty of care to maintain a police department which acts in accordance with law and for which it is ultimately responsible.

62.   The officer-defendants owed Mr. Landers a duty of care to exercise reasonable caution due diligence to ascertain probable cause before affecting his arrest. The defendants, jointly and severally, breached their duty of care and negligently caused injuries, emotional distress and damage to Mr. Landers.

63.   The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Mr. Landers and violated his statutory and common law rights as guaranteed by  the laws and Constitution of the State of New York.

64.   The defendants' deprivations of Mr. Landers's rights resulted in the injuries and damages set forth above.

## NINTH CLAIM
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

65.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "64" with the same force and effect as if fully set forth herein.

66.  Defendant-Officers misrepresented and falsified evidence before the District Attorney.

67.  Defendant-Officers did not make a complete and full statement of facts to the District Attorney.

68.  Defendant-Officers withheld exculpatory evidence from the District Attorney.

69.  Defendant-Officers were directly and actively involved in the initiation of criminal proceedings against plaintiff Patrick Landers.

70.  Defendant-Officers lacked probable cause to initiate criminal proceedings against plaintiff Patrick Landers.

71.  Defendant-Officers acted with malice in initiating criminal proceedings against plaintiff Patrick Landers.

72.  Defendant-Officers were directly and actively involved in the continuation of criminal proceedings against plaintiff.

73.  Defendant-Officers lacked probable cause to continue criminal proceedings against plaintiff.

74.  Defendant-Officers acted with malice in continuing criminal proceedings against plaintiff.

75.  Defendant-Officers misrepresented and falsified evidence throughout all phases of the criminal proceeding.

76.  Notwithstanding the perjurious and fraudulent conduct of defendant-officers, the criminal proceedings in regard to the one charge of disorderly conduct was terminated in plaintiff's favor on or about October 2, 2015, when upon motion of the District Attorney of Kings County the charge was dismissed.

**WHEREFORE**, Plaintiff Patrick Landers demands judgment against the defendants

individually and jointly and prays for relief as follows:

a.  That he be compensated for violation of his constitutional rights, pain, suffering, and economic loss; and

b.  That he be awarded punitive damages against the officer-defendants; and

c.  That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d.  For such other further and different relief as to the Court may seem just and proper.

Dated:        New York, New York
              September 16, 2016

Respectfully submitted,

_____/S/_____

Geoffrey St. Andrew Stewart
Moira Meltzer-Cohen
*Attorneys for the Plaintiff*
139 Fulton Street, Suite 508
New York, New York 10038
(212) 625-9696