UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PATRICK LANDERS,

                              Plaintiff,               **MEMORANDUM AND ORDER**
                                                          16-CV-5176 (PKC) (CLP)

        - against-

THE CITY OF NEW YORK, POLICE
OFFICER KEON FRANKS, and
LIEUTENANT ASHRAF AHMED,

                              Defendants.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

        Plaintiff Patrick Landers ("Plaintiff" or "Landers") brings this action against Defendants

Officer Keon Franks ("Defendant Franks" or "Franks") and Lieutenant Ashraf Ahmed

("Defendant Ahmed" or "Ahmed") of the New York City Police Department ("NYPD"), pursuant

to 42 U.S.C. § 1983, alleging false arrest, malicious prosecution, and First Amendment retaliation

in connection with his arrest on April 14, 2014 and subsequent prosecution.  Before the Court is

Defendants' motion for summary judgment.  For the reasons stated below, Defendants' motion is

granted in part and denied in part.

## BACKGROUND

### I.       Relevant Facts[1]

        On April 14, 2014, Plaintiff, a freelance photojournalist, went to document a Black Lives

Matter demonstration, consisting of hundreds of protestors, in Brooklyn, New York.  (Defs.' 56.1,

Dkt. 38, at ¶¶ 1, 4.)  Defendant Ahmed was assigned to monitor the demonstration and Defendant

---

[1] Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement denotes that
this Court has deemed the underlying factual allegation undisputed.  Any citations to Defendants'
56.1 Statement incorporates by reference the documents cited therein.  Where relevant, however,
the Court may cite directly to the underlying document.

Franks was assigned to an arrest team monitoring the demonstration. (*Id.* at ¶¶ 2–3.) Plaintiff was following the demonstration and recording interviews with marchers. (Demonstration Video ("Video"), Dkt. 37-5, at 0:56–4:27.) While Plaintiff was recording an interview with a demonstrator, large numbers of protestors and officers, including Defendant Franks, began to run down Flatbush Avenue toward Prospect Park. (*Id.* at 4:30; Defs.' 56.1, at ¶¶ 6–7.) Plaintiff ran with the crowd, with his video camera still recording. (Video, at 4:28–5:15.) On the recording, Plaintiff captured Defendant Franks running after the demonstrators in the street to Plaintiff's left. (*Id.* at 4:48.)

When Plaintiff caught up with part of the crowd that was ahead of him, officers were arresting at least one individual. (Video, at 5:18; Defs.' 56.1, at ¶ 9.) A number of officers were involved in the arrest, while other officers "formed a wall with their bodies, to protect the [arresting] officers' zone of safety"[2] and ensure that no one interfered with the arrest. (Defs.' 56.1, at ¶ 10.) Several officers forming the wall yelled at the surrounding crowd to, variously, "back up," "back it up," and "back the fuck up." (Video, at 5:24–5:36; Deposition of Patrick Landers ("Landers Dep."), Dkt. 37-2, at 52:2–23.) Plaintiff was able to stand in place and record the arrest for approximately 35 seconds. (Video, at 5:36–6:11.) At that point, an officer in a white shirt who was helping to form the wall around the arrest spoke to Plaintiff and said, "I know you are press, [but] just take a step back." (*Id.* at 6:11–6:12; Landers Dep., at 52:20–53:2, 58:10–21.) According to Plaintiff, another officer then "stepp[ed] in front of [him] every place the camera was" in an

---

[2] Generally, the "zone of safety" is a "buffer zone between [an emotionally] disturbed person and officers, usually of at least 20 feet." *Smith v. City of New York*, No. 12-CV-4922 (NRB), 2015 WL 4643125, at *2 (S.D.N.Y. Aug. 5, 2015). However, according to Defendant Ahmed, "the zone of safety is for the officer's safety to be able to perform their duties, regardless of the exact scenario." (Deposition of Ashraf Ahmed, Dkt. 40-1, at 18:13–21; *see also id.* at 19:17–20:7 (agreeing that the zone of safety "is not necessarily a fixed number of feet" and is "subjective"), 74:11–75:11.)

attempt to block Plaintiff from recording the arrest.  (Landers Dep., at 59:21–25; *see* Video, at 6:20–6:30.)  Plaintiff said to the officer, "I'm with the press, you're not allowed to do that." (Video, at 6:23–6:28; Landers Dep., at 59:17–18.)  Plaintiff then walked around the officer standing in front of him and moved closer to where the arrest was taking place.  (Video, at 6:28–6:32.) The crowd was again instructed by one or more officers to "back up," and "back up please." (Video, at 6:32–6:33.)  Defendant Ahmed then approached Plaintiff for the first time, stating "[a]lright, let's go.  Let's go.  Sir, you're in—you're right in the zone."  (Video, at 6:34–6:35.)  As Ahmed approached, Plaintiff backed up, and Ahmed told Plaintiff, "okay, just stay right here. Thank you.  Just stay right here."  (*Id.* at 6:38–6:41.)  The video then appears to show an individual wearing an NYPD hat begin to push Plaintiff back.  (*Id.* at 6:42–6:46; Landers Dep., at 65:9-10.) The surrounding officers continued to yell to "just back up."  (Video, at 6:42–6:48; Landers Dep., at 64:15–6:24.)  As he was pushed back, Plaintiff yelled "don't touch me," "whoa, whoa," and "I'm with the fucking press.  You should fucking care." (Video, at 6:42–6:50.)  Throughout this portion of the encounter, various officers continued to yell "get back."  (*Id.*)

As Plaintiff was arguing with the officers, Defendant Ahmed, speaking on a bullhorn directly in front of Plaintiff, said, "Sir, you need to stay out of our zone of safety.  You are too close, sir.  You need to stay out of our zone of safety.  You need to stay out of our zone of safety. You are too close to the police, sir."  (*Id.* at 6:54–7:08; Landers Dep., at 65:12–19.)  Moments later, an altercation broke out close to Plaintiff, and he told nearby officers, "I'm not moving.  I'm sorry I'm yelling.  I wasn't yelling at you. . . . I'm sorry."  (*Id.* at 7:12–7:26; Landers Dep., at 66:13–24.) Officers near Plaintiff continued to yell "get back" at the surround crowd, and Plaintiff continued to move back.  (Video, at 7:26–7:41.)  As Plaintiff moved back, more protesters were arrested in his vicinity, and NYPD officers began to establish a new zone of safety, telling

protestors to "get back" and "back it up" behind where the arrests were occurring. (*Id.* at 7:30–7:44.) The officers continued to yell "get back" and "back up," and Plaintiff moved back. (*Id.* at 7:55–7:59.) As Plaintiff moved back, Defendant Ahmed returned to the area directly in front of where Plaintiff was standing, spread his arms and began moving backward toward Plaintiff (as he attempted to back up the crowd), yelling, "You are in our zone of safety. Get back." (*Id.* at 7:57–8:05; Landers Dep., at 67:10–70:4.) Plaintiff responded by continuing to back up and stating "I thought I'd moved." Meanwhile, various nearby officers continued to yell "get back" and "back up." (Video, at 7:57–8:15.)

As officers continued to tell people to move back, Plaintiff said, "Don't touch me, please. I don't have to move, I can stay in my place. Just go easy, bro." (*Id.* at 8:17–8:21.) Plaintiff then recorded an arrest nearby, and began to walk in front of a line of officers as he recorded. (*Id.* at 8:21–8:42.) As Plaintiff moved to the right, he walked in front of Defendant Ahmed. (*Id.* at 8:39–8:42.) Defendant Ahmed, again holding a bullhorn, issued a warning to those present to back up, stating "You will be arrested. I'm not going to tell you again." (*Id.* at 8:45–8:51; Defs.' 56.1, at ¶ 17; Landers Dep., at 70:9–71:3.) The recording appears to show Plaintiff continuing to move to the right, toward the edge of the sidewalk. Defendant Ahmed is also shown walking to the right toward Plaintiff as he yells into the bullhorn, "Sir, you will be arrested, I am not going to tell you again." (Video, at 8:45–8:51.) After repeating this warning, Defendant Ahmed directed Defendant Franks to arrest Plaintiff. (Video, at 8:52–9:01; Defs.' 56.1, at ¶ 18.) Plaintiff stated that he "didn't do anything" and Ahmed replied, "I gave you enough warnings." (*Id.* at 8:55–9:08; Landers Dep., at 72:7–15.)

Plaintiff recorded the interaction between himself and the police up to the moment of his arrest. At no time was Plaintiff ordered not to film. (Defs.' 56.1, at ¶ 16.)

Plaintiff was initially arrested for obstructing governmental administration, a violation of New York Penal Law § 195.05.[3]  (Dkt. 37-6.)  Plaintiff was placed in a New York City Department of Correction bus, where he remained for several hours, and then taken to the 75th precinct.  (Defs.' 56.1, at ¶ 19.)  In total, Plaintiff was held in custody for approximately 10 hours and 20 minutes, at which point he was issued a Desk Appearance Ticket instructing him to appear in Criminal Court on May 27, 2015.  (*Id.* at ¶¶ 20–21.)

On May 22, 2015, Defendant Franks signed a criminal court complaint charging Plaintiff with disorderly conduct pursuant to New York Penal Law § 240.26(6).[4]  (*Id.* at ¶ 22; Dkt. 37-9.) The criminal court complaint states, *inter alia*, that "as officers began to effect other arrests, a uniformed police lieutenant and multiple other officers ordered a group on the sidewalk, including [Plaintiff], to step back, and that, while the other individuals in the group complied, [Plaintiff] refused to step back and instead remained at the same location, and that [Plaintiff] ignored repeated and specific orders to step back issued by uniformed police officers, instead remaining in the area vacated by the other individuals."  (Dkt. 37-9; Defs.' 56.1, at ¶ 23.)

Plaintiff appeared in court at least three times, and the case was ultimately dismissed and sealed on October 2, 2015.  (*Id.* at ¶ 24.)

---

[3] Under New York Penal Law § 195.05, a person is guilty of obstructing governmental administration, *inter alia*, "when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act."

[4] Under New York Penal Law § 240.20(6), "a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[,] . . . [h]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."

## II.     Procedural History

Plaintiff filed his initial complaint on September 16, 2016.  (Dkt. 1.)  At a pre-motion conference on May 11, 2018, Plaintiff withdrew his claims for deprivation/violation of rights, *Monell* liability, abuse of process, negligent hiring, and negligence.  (*See* 5/11/18 minute entry.) Defendants' motion for summary judgment on Plaintiff's remaining claims for false arrest, malicious prosecution, and violations of the First Amendment was fully briefed on August 13, 2018.  (Dkt. 36.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party.  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).  Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial.  *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]."  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted;

alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

## DISCUSSION

### I. Malicious Prosecution

In order to sustain a Section 1983 claim for malicious prosecution, a plaintiff "must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). A plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)).

Here, Plaintiff cannot show that the criminal proceeding was terminated in his favor. "It is the plaintiff's burden to demonstrate that charges against him were terminated favorably." *Lazaratos v. Ruiz*, No. 00-CV-2221 (BSJ), 2003 WL 22283832, at *3 (S.D.N.Y. Sept. 30, 2003).

The Second Circuit recently clarified that "affirmative indications of innocence [are required] to establish 'favorable termination.'" *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). "The answer to whether termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed impl[ies] a lack of reasonable grounds for prosecution." *Murphy*, 118 F.3d at 948.

It appears from the case file that Plaintiff's case was dismissed "in the interests of justice." (Dkt. 37-10, at 5.)[5] However, "dismissals by the prosecution 'in the interests of justice' under New York Criminal Procedure Law § 170.40, are generally considered not to be dispositions in favor of the accused." *Murphy*, 118 F.3d at 949. In response, Plaintiff simply states that the case was dismissed, "as Plaintiff recalls[,] because the prosecutor stated that there was no legal basis for the arrest *ab initio*." (Plaintiff's Brief ("Pl.'s Br."), Dkt. 43, at 18.) Plaintiff's self-serving recollection is insufficient to establish favorable termination, as Plaintiff "has submitted no evidence whatsoever to show that the charges were terminated favorably." *Lazaratos*, 2003 WL 22283832, at *3; *see also Lanning*, 908 F.3d at 28 ("When a person has been arrested and indicted, absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily 'impl[y] a lack of reasonable grounds for the prosecution.'" (quoting *Conway v. Village of Mount Kisco*, 750 F.2d 205, 215 (2d Cir. 1984))); *Antic v. City of New York*, 273 F. Supp. 3d 445, 458 (S.D.N.Y. 2017), *reconsideration denied,* No. 16-CV-2425 (JMF), 2017 WL 3491967 (S.D.N.Y. Aug. 14, 2017), *and aff'd*, No. 17-2670-CV, 2018 WL 3478834 (2d Cir. July 19, 2018) ("[I]t is [plaintiff's] burden to prove that the proceedings were terminated in his favor and thus, to survive summary judgment, he had to point to evidence

---

[5] Except for deposition transcripts, page numbers refer to the pagination generated by the court's CM/ECF docketing system, and not the document's internal pagination.

in the record suggesting that the charges 'were dismissed because evidence existed suggesting [his] innocence.'" (quoting *Coleman v. City of New York*, No. 11-CV-2394 (ENV) (RLM), 2016 WL 4184035, at *3 (E.D.N.Y. Feb. 25, 2016))).  Accordingly, Plaintiff's malicious prosecution claim is dismissed.

## II.     False Arrest Claim

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citing *Weyant*, 101 F.3d at 852).  To prevail on a claim of false arrest or unlawful imprisonment, a plaintiff must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted). "'[T]he existence of probable cause' for an arrest 'is an absolute defense to a false arrest claim.'" *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).

Here, the only disputed issue with respect to Plaintiff's April 14, 2015 false arrest claim is whether there was probable cause for the arrest.

> Although the existence of probable cause must be determined with reference to the facts of each case, in general '[p]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'

*Manganiello*, 612 F.3d at 161 (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). The existence of probable cause "must be determined by reference to the totality of the

circumstances," *id.*, and "may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and the knowledge of the officers," *Jackson v. City of New York*, 939 F. Supp. 2d 235, 249 (E.D.N.Y. 2013).

Nevertheless, "the issue of probable cause is a question of law to be decided by the [C]ourt only where there is no real dispute as to the facts or the proper inferences to be drawn from such facts." *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (quoting *Parkin v. Cornell Univ.*, 583 N.E.2d 939, 942 (N.Y. 1991)). When the question of whether probable cause existed is "predominantly factual in nature," it is appropriate for the jury to decide. *Barksdale v. Colavita*, 506 F. App'x 82, 84 (2d Cir. 2012) (summary order) (citation and internal quotation marks omitted); *see also Jeffreys v. City of New* York, 426 F.3d 549, 553–54 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)). Thus, if there is conflicting evidence that could support reasonable persons in drawing different inferences, then the question must be resolved by the jury. *Rounseville*, 13 F.3d at 630; *see also Murphy*, 118 F.3d at 947 ("Where the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence *vel non* of probable cause is to be decided by the jury.").

Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest claim because they had probable cause to arrest Plaintiff under four statutes: (1) New York Penal Law § 240.20(6) ("§ 240.20(6)" or "Section 240.20(6)"); (2) New York Penal Law § 195.05 ("§ 195.05" or "Section 195.05"); (3) New York Vehicle & Traffic Law § 1156(a) ("VTL § 1156(a)" or "VTL Section 1156(a)"); and (4) New York City Administrative Code § 10-110 ("N.Y.C. Admin. Code § 10-110" or "N.Y.C. Admin. Code Section 10-110"). (Defendants' Brief

("Defs.' Br."), Dkt. 39, at 5–11.)  Drawing all reasonable inferences in Plaintiff's favor, the Court finds that genuine disputes of material fact prevent it from determining whether Defendants had probable cause to arrest Plaintiff.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's false arrest claim is denied.

### A.  Probable Cause Under New York Penal Law § 240.20(6)

Defendants' primary argument is that they had probable cause to arrest Plaintiff for disorderly conduct.  (Defs.' Br., at 6–8.)  Pursuant to § 240.20(6), "a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[,] . . . [h]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."  N.Y. Penal Law § 240.20(6).  The Second Circuit has held that a disorderly conduct offense consists of four elements: an individual must have "(1) congregated with other persons in a public place; (2) [been] given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted with intent to cause or recklessly created a risk of public inconvenience, annoyance or alarm."  *Kass v. City of New York*, 864 F.3d 200, 211 (2d Cir. 2017).

To satisfy the first element, the New York Court of Appeals has held that "[t]he term 'congregates with others,' as used in the statute, requires at the very least three persons assembling at a given time and place."  *People v. Carcel*, 114 N.E.2d 81, 85 (N.Y. 1957); *see also Johnson v. City of New York*, 15-CV-6915 (ER), 2019 WL 294796, at *8 (S.D.N.Y. Jan. 23, 2019) (applying this interpretation where defendant officers asserted a qualified immunity defense).  For purposes of the second element, an "order to disperse" is an order to "separate[ or] go different ways," *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 373 (S.D.N.Y. 2015), or "to move to a particular location," *Pinto v. City of New York*, 728 F. App'x 26, 31 (2d Cir. 2016) (summary

order).  An order to disperse is lawful "unless the order was 'purely arbitrary' and 'not calculated in any way to promote the public order.'" *Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 206 (2d Cir. 2010) (summary order) (quoting *People v. Galpern*, 181 N.E.572, 574 (N.Y. 1932)). The third element may be satisfied by verbal refusals to comply and actions inconsistent with the dispersal order.  *See Marcavage v. City of New* York, 689 F.3d 98, 110 (2d Cir. 2012) (affirming denial of summary judgment where audio recording demonstrated that plaintiffs were "hostile and noncompliant"); *Shamir v. City of New York*, 804 F.3d 553, 554–55, 557 (2d Cir. 2015) (affirming dismissal where the plaintiff, who was ordered to disperse, left the area but then returned to call a police officer "a thug").  The final element requires that the refusal to comply create a risk of "actual or threatened public harm."  *People v. Johnson*, 9 N.E.3d 902, 903 (N.Y. 2014) (holding that the refusal to move when asked to do so by police did not provide probable cause for an arrest because there was no public harm).  Refusal to comply with a police order may be justified if "the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order." *Caravalho v. City of New York*, 732 F. App'x 18, 22 (2d Cir. 2018) (quoting *People v. Todaro*, 258 N.E.2d 711, 712 (N.Y 1970)).

Defendants argue that they had probable cause to arrest Plaintiff for disorderly conduct because he failed to comply with numerous police orders during the demonstration to back up and stay out of the zone of safety.  However, genuine issues of material fact preclude the Court from making this finding as a matter of law.

The deposition testimony, Video, and 56.1 statements currently before the Court do not indisputably establish that Plaintiff refused to comply with a lawful police order.  In his deposition testimony, Plaintiff clearly asserts that he complied with each order directed to him to back up and stay out of the zone of safety.  (*See, e.g.*, Landers Dep., at 64:21–24, 65:3–10, 68:1–9.)  Plaintiff's

video recording provides some, albeit inconclusive, support for Plaintiff's version of events. During the critical minutes prior to his arrest, Plaintiff never appears on camera. (Video, at 4:28–9:00.) Instead, the Video mostly shows police officers, including Defendants, forming and standing in shoulder-to-shoulder lines to enforce the zone of safety around multiple arrests. (*See, e.g.*, *id.* at 6:40–7:15, 7:37–8:41.) Defendants argue that the recording indisputably shows that Plaintiff failed to comply with police orders. (Defs.' Br., at 7.) The Court disagrees. The Video provides no direct evidence of Plaintiff's physical position relative to the line of police. If anything, the recording appears to corroborate Plaintiff's claim that he backed up when asked directly to do so and remained outside of the line of police officers establishing the zone of safety. (*See, e.g.*, Video, at 6:10–6:13.)

The recording is also inconclusive as to the exact events that precipitated Defendant Ahmed's order to Defendant Franks to arrest Plaintiff. Once the officers seemed to firmly establish a zone of safety around the second arrest and the surrounding tumult calms, the Video appears to show that Plaintiff began to walk to the right along the line of officers. (*Id.* at 8:04–8:42.) None of the officers acknowledge Plaintiff's presence or give an order to him. As Plaintiff moves, he appears to pass Defendant Ahmed. (*Id.* at 8:42.) Defendant Ahmed is then shown to walk some distance towards Plaintiff's new position further to the right along the line of officers, apparently in front of Defendant Franks. (*Id.* at 8:46–8:49.) Defendant Ahmed does not issue a new order to back up, but begins to yell into his bullhorn "I'm not going to tell you again." (*Id.* at 8:43–8:52.) He then orders Defendant Franks to "arrest him," apparently referring to Plaintiff. (*Id.* at 8:53.) Throughout this encounter, the Video does not show Plaintiff's proximity to the line of officers or his response to Defendant Ahmed in the moments before his arrest.

Courts in this Circuit have denied summary judgment in substantially similar

circumstances.  For example, in *Graham v. City of New York*, the Honorable Margo K. Brodie denied summary judgment on a false arrest claim where the defendants asserted probable cause to arrest for obstruction of governmental administration based on failure to comply with a police officer's request for the plaintiff's vehicle registration.  928 F. Supp. 2d 610, 615–18 (E.D.N.Y. 2013).  The plaintiff denied that he had failed to comply with this request, but argued that he simply held the registration in the middle of his car window, rather than fully extending it, while asking the defendant officer why he needed the registration.  *Id.* at 616–17.  Judge Brodie found that this discrepancy created a genuine dispute as to a material fact that was appropriate for the jury to decide.  *Id.*; *see also Cooper v. Dieugenia*, No. 14-CV-6136 (PKC), 2017 WL 818367, at *5 (E.D.N.Y. Feb. 27, 2017) (denying summary judgment where the defendants claimed that plaintiff had behaved violently, yet the plaintiff contested this version of events).

Without the ability to conclusively determine Plaintiff's actions based on the Video, and faced with Plaintiff's statements that he complied with the order to remain outside of the zone of safety at all times, the Court cannot find that Plaintiff refused to comply.  Nor can it determine whether Defendant Ahmed's final warnings were calculated to promote public order, as opposed to being purely arbitrary, without greater clarity regarding Plaintiff's actions in the final moments of the recording.  *See Crenshaw v. City of Mount Vernon*, 372 F. App'x at 206.  Accordingly, the Court is unable to determine whether probable cause existed to arrest Plaintiff for disorderly conduct.

### B.  Probable Cause Under New York Penal Law § 195.05

Defendants argue that they also had probable cause to arrest Plaintiff for obstructing governmental administration ("OGA") under § 195.05.  In fact, this was the provision that Defendant Ahmed relied on in the moment of arrest, announcing to Plaintiff that "he is under arrest

in violation of [unintelligible] obstructing governmental administration." (Video, at 8:57–9:00.)
Section 195.05 states that a person is guilty of OGA, *inter alia*, "when he intentionally obstructs,
impairs or perverts the administration of law or other governmental function or prevents or
attempts to prevent a public servant from performing an official function, by means of
intimidation, physical force or interference, or by means of any independently unlawful act." OGA
has four elements: "(1) prevention or attempt to prevent (2) a public servant from performing (3)
an official function (4) by means of intimidation, force or interference." *Lennon v. Miller*, 66 F.3d
416, 424 (2d Cir. 1995). "Physical force or physical interference" includes "inappropriate and
disruptive conduct at the scene of the performance of an official function." *Husbands ex rel. Forde
v. City of New York*, No. 05-CV-9252 (NRB), 2007 WL 2454106, at *13 (S.D.N.Y. Aug. 16, 2007),
*aff'd*, 335 F. App'x 124 (2d Cir. 2009) (summary order); *see also Hilderbrandt v. City of New
York*, No. 13-CV-1955, 2014 WL 4536736, at *4 (E.D.N.Y. Sept. 11, 2014).

Defendants argue that Plaintiff "physically interfered with the [Defendants'] official
function when he refused to move as the officers expanded their 'zone of safety' to accommodate
the additional arrests that were occurring," despite hearing multiple orders to disperse. (Defs.' Br.,
at 8.) As with Defendants' argument for probable cause to arrest for disorderly conduct, this
defense founders on summary judgment because the very fact of Plaintiff's compliance remains in
dispute. Based on Plaintiff's testimony and the video evidence, a reasonable jury could credit
Plaintiff's statement that he complied with Defendants' orders for him to back up and stay out of
the zone of safety. In that scenario, Defendants would have lacked probable cause to arrest
Plaintiff for OGA. Accordingly, this question must be reserved for the jury to answer.

### C. Probable Cause Under New York Vehicle & Traffic Law § 1156(a) and New York City Administrative Code § 10-110

Defendants also argue that, even if they lacked probable cause to arrest Plaintiff for

disorderly conduct or OGA based on his conduct just prior to the arrest, they would have had probable cause to arrest him for violations of New York Vehicle & Traffic Law §1156(a) and New York City Administrative Code § 10-110 earlier during the demonstration.  (Defs.' Br., at 8–11.)

VTL Section 1156(a) provides that "[w]here sidewalks are provided and they may be used with safety it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway."  N.Y. Veh. & Traf. Law § 1156(a).  N.Y.C. Admin. Code § 10-110(a) states that "[a] procession, parade, or race shall be permitted upon any street or in any public place only after a written permit therefor has been obtained from the police commissioner," and N.Y.C. Admin. Code § 10-110(c) makes it a violation of the code provision punishable "by a fine of not more than twenty-five dollars, or by imprisonment for not exceeding ten days, or by both such fine and imprisonment."  *See also Allen v. City of New York*, No. 03-CV-2829 (KMW) (GWG), 2007 WL 24796, at *6 (S.D.N.Y. Jan. 3, 2007).

Even though Plaintiff was not charged under either statute, probable cause that Plaintiff was violating any of these statutes could nevertheless justify his arrest and provide a complete defense to his false arrest claim.  *See Marcavage*, 689 F.3d at 109–110 ("Defendants prevail if there was probable cause to arrest [the plaintiffs] for any single offense." (citing *Jaegly*, 439 F.3d at 154 (2d Cir. 2006)).  Although traffic infractions are not crimes under New York Law, they are "deemed an offense" for "purposes of arrest without a warrant" under New York Criminal Procedure Law § 140.  N.Y. Veh. & Traf. Law § 155; *see Roper v. City of New York*, No. 15-CV-8899 (PAE), 2017 WL 2483813 (S.D.N.Y. June 7, 2017).  While traffic infractions are minor offenses, probable cause that a traffic infraction has been committed will satisfy Fourth Amendment requirements for a custodial arrest.  *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a

very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *see also United States v. McFadden*, 238 F.3d 198, 203 (2d Cir. 2001) (holding that police had probable cause to arrest an individual seen riding a bicycle on the sidewalk—a traffic infraction under New York City law—and that the arrest did not violate the Fourth Amendment). Accordingly, if Defendants had probable cause to believe that Plaintiff violated either traffic provision on August 14, 2014, Plaintiff's false arrest claim would fail as a matter of law.

In response, Plaintiff disputes the applicability of VTL § 1156(a) in New York City, and argues that an issue of fact exists as to whether he was a "participant" in the procession as required to violate N.Y.C. Admin. Code § 10-110. (Pl.'s Br., at 16.) Recent case law and New York City rules make clear that VTL § 1156(a) has been in effect in the city since 1998, so Plaintiff's effort to avoid the application of VTL § 1156(a) fails. *See* N.Y.C. R. & Regs. tit. 34, § 4-04(e), n.2; *Lynch v. City of New York*, 16-CV-7355 (LAP), 2018 WL 1750078, at *6 (S.D.N.Y Mar. 27, 2018); *Gonzalez v. City of New York*, No. 14-CV-7721 (LGS), 2017 WL 149985, at *2 (S.D.N.Y. Jan. 13, 2017). As to the applicability of N.Y.C. Admin. Code § 10-110 to Plaintiff, the Court is skeptical that a reporter who bears a visible press credential while covering an unpermitted procession is properly considered a participant, as opposed to an observer. Notably, Defendants cite no case for this proposition. Nevertheless, the Court need not address this question because it finds that Defendants' claim to probable cause under both VTL § 1156(a) and N.Y.C. Admin. Code § 10-110 turns on a single issue of fact that remains in question: whether or not Defendants had a basis to believe that Plaintiff was in the roadway at any time during the demonstration.

In support of their assertion of probable cause, Defendants point to Defendant Franks's deposition testimony. (Defs.' Br., at 10.) In his testimony, Defendant Franks stated that Plaintiff

was running in the roadway when he first saw him.  (Franks Deposition ("Franks Dep."), Dkt. 37-3, at 48:5–49:6.)  If true, this knowledge would establish probable cause to arrest Plaintiff, at least under § 1156(a).  But this fact remains in dispute.  Plaintiff identifies reasons to doubt the credibility of Franks's account.  (Plaintiff's 56.1 Response ("Pl.'s Resp."), Dkt. 45, at 4 ¶ 8.)  Franks states that when he saw Plaintiff, Plaintiff was to his left as he was running.  (Franks Dep., at 49:7–13.)  Yet the Video clearly shows Plaintiff to the *right* of Defendant Franks as *Franks* is running in the street and, at the same time, Plaintiff "close to[,] if not on[,] the sidewalk," as he claims in his 56.1 Counterstatement.  (*Id.*; Pl.'s Resp., at 4, ¶ 8.)  While this discrepancy does not completely undermine Franks's testimony (or prove Plaintiff's precise location at that moment), it does raise a factual dispute at least as to the credibility of Franks's statement that he saw Plaintiff running in the street to the officer's left—which is the only evidence Defendants cite in support of probable cause to arrest Plaintiff for violating VTL § 1156(a) or N.Y.C. Admin. Code § 10-110.[6]

Again, courts in this Circuit have denied summary judgment when confronted with similar credibility issues on summary judgment.  For example, in *Usavage v. Port Authority of New York and New Jersey*, the defendant-officers sought to challenge the plaintiff's excessive force claim by presenting video evidence that appeared to show the plaintiff in no apparent pain or distress.  932 F. Supp. 2d 575 (S.D.N.Y 2013).  There, the Honorable J. Paul Oetken denied summary judgment, leaving it for the jury to determine the credibility of the plaintiff's testimony in light of the video evidence.  *Id.* at 596–98.  Quoting the Second Circuit, Judge Oetken reasoned:

> On a motion for summary judgment, the court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact, but only to determine whether there are issues to be tried. Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court

---

[6] Furthermore, even if Plaintiff was, in fact, in the street at the moment the Video shows Franks running past, that would not suffice to establish probable cause for Plaintiff's arrest if Franks did not actually see Plaintiff in the street then or at any other time.

on summary judgment.

*Id.* at 598 (quoting *United States v. Rem*, 38 F.3d 634, 643–44 (2d Cir. 1994)). Thus, in *Usavage*, though the defendants' arguments based on the video evidence were "powerful," they were not so decisive as to "flatten the genuine dispute of fact created by [the plaintiff's] evidence." *Id.*; *see also Milfort v. Prevete*, 922 F. Supp. 2d 398, 406 (E.D.N.Y. 2013) (denying summary judgment as to plaintiff's false arrest claim when the parties disagreed about whether plaintiff raised his voice or complied with a police officer's directive).

Resolving all ambiguities in the favor of the non-moving party, the Court finds that a reasonable jury could find that Plaintiff was running on the edge of the sidewalk while aiming and holding out his camera toward and over the street (to *his* left) to film the surrounding activity. This fact could defeat Defendants' claim that there existed probable cause to arrest Plaintiff for violations of state and city traffic laws. Since Defendant Franks's testimony is the only evidence offered to establish probable cause with respect to Plaintiff's alleged violations of VTL § 1156(a) or N.Y.C. Admin. Code § 10-110, a genuine issue of material fact remains for the *jury* to resolve as to whether Defendants had probable cause to believe that Plaintiff violated either provision. *Cf. Holmes v. City of New York*, No. 14-CV-5253 (LTS) (SDA), 2018 WL 1604800, at *2–3 (S.D.N.Y. Mar. 29, 2018) (granting summary judgment "based on the *undisputed* fact that Plaintiff was standing in the roadway" (emphasis added)).

### D. Qualified Immunity

As a final backstop, Defendants argue that even if they lacked probable cause to arrest Plaintiff for any criminal offense or violation, they had arguable probable cause sufficient to entitle them to summary judgment on qualified immunity grounds. (Defs.' Br., at 20–23.) In the context of a false arrest claim under § 1983, even if probable cause is lacking in a given case, an officer "will still be entitled to qualified immunity . . . if he can establish that there was 'arguable probable

cause' to arrest." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). "The test is not toothless, however: 'If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer.'" *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)); *see also Jenkins*, 478 F.3d at 87 ("Arguable' probable cause should not be misunderstood to mean 'almost' probable cause.").

The Court must determine whether it was objectively reasonable to believe that probable cause existed, *i.e.*, whether an officer of reasonable competence could have believed that it existed, based on the information known by Defendants at the time of Plaintiff's arrest. *See Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2008) ("A Court must evaluate the objective reasonableness of the [officer's] conduct in light of . . . the information the . . . officers possessed." (citation and internal quotation marks omitted)). This objective reasonableness inquiry is a mixed question of law and fact. *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) ("*Kerman II*"). Thus, "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) ("*Kerman I*"). Instead, a jury should be allowed to resolve any disputed facts material to the determination of reasonableness, after which the Court may make an ultimate judgment on the question of qualified immunity. *Zellner*, 494 F.3d at 368.

Resolving all factual ambiguities in Plaintiff's favor, the Court finds that Defendants have

not sufficiently established that no genuine issue of material fact exists as to whether they reasonably believed, as an objective matter, that they had probable cause to arrest the Plaintiff. Here, the probable cause and arguable probable cause analyses rise or fall together, because the facts relating to what Plaintiff actually did during the demonstration and what Defendants actually saw Plaintiff do during the demonstration are still in dispute.[7]  If a reasonable jury were to credit Plaintiff's version of the facts (especially given the Video), then Defendants' actions could be found to be objectively unreasonable with respect to arresting Plaintiff for OGA, disorderly conduct, or violating state or city traffic laws.  Conversely, if the jury found Defendants' account to be true, then Defendants could be entitled to qualified immunity.  Under these circumstances, summary judgment on the basis of qualified immunity must be denied.  *Accord Kerman II*, 374 F.3d at 109 (stating that "factual questions must be resolved by the factfinder").

## III.    First Amendment Claims

Defendants also seek summary judgment as to Plaintiff's First Amendment claims.  (Defs.' Br., at 15–19.)  While the Court and Defendants understood Plaintiff's complaint to also allege a First Amendment violation claim (Dkt. 1, at ¶¶ 53-56), he has only briefed his First Amendment retaliation claim in opposition to summary judgment (*see* Pl.'s Br., at 18–19).  Accordingly, the Court dismisses Plaintiff's First Amendment violation claim as abandoned.  *See Collins v. City of*

---

[7] The Court finds *Jefferson v. Reddish*, 718 F. App'x 94, 96 (2d Cir. 2018) (summary order), squarely on point.  There, the Second Circuit reasoned:

> Because a jury could reasonably find that defendants lacked probable cause or even arguable probable cause to arrest [Plaintiff] and also could find as a fact that [supervising officers] were present during the alleged violations of [Plaintiff]'s constitutional rights, genuine disputes of material fact preclude our determining as a matter of law whether defendants are entitled to qualified immunity.

*Id.* at 96.

*New York*, 295 F. Supp. 3d 350, 361 (S.D.N.Y. 2018) ("Federal courts may deem a claim abandoned when a party opposing summary judgment fails to address the [movant's] argument in any way." (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003))).  As to Plaintiff's First Amendment retaliation claim, the Court finds that Defendants are entitled to summary judgment because Plaintiff has put forth no "competent evidence that [D]efendants' actions were motivated by [P]laintiff's exercise of speech and association rights." *Lebowitz v. City of New York*, No. 12-CV-8982 (JSR), 2014 WL 772349, at *4 (S.D.N.Y. Feb. 4, 2014).

In order to make out a First Amendment retaliation claim, a plaintiff must show that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Here, Plaintiff has failed to offer up any evidence that would plausibly establish that Defendants were motivated to arrest him based on his exercise of First Amendment rights.  Indeed, Plaintiff admits that throughout the entire encounter, he was never ordered to cease filming.  (Pl.'s Resp., at 9.)  In fact, the only police officer he identifies as having "intentionally block[ed] his camera's line of sight" is not named as a defendant in this case.  While Plaintiff argues that the jury could infer from the absence of probable cause to arrest Plaintiff that Defendants arrested Plaintiff out of a desire to retaliate against him for exercising his First Amendment right to film the demonstration and the police's conduct—which resulted in the curtailment of his exercise of that right—such an inference would be purely speculative and thus improper for the jury to make.  Plaintiff's mere assertion that that Defendants were motivated to arrest him because of his filming is not sufficient to create a triable issue of fact.  Rather, "[s]pecific proof of improper motivation

is required in order for [P]laintiff to survive summary judgment on a First Amendment retaliation claim." *Curley*, 268 F.3d at 73 (citing *Blue v. Koren*, 72 F.3d 1075, 1082–83 (2d Cir.1995)); *see also Catrett*, 477 U.S. at 322 (holding that summary judgment is appropriate when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Accordingly, Plaintiff's claim of First Amendment retaliation is dismissed.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment is granted in part and denied in part.

SO ORDERED.

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: March 22, 2019
          Brooklyn, New York